**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: September 25, 2008**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MELVIN JOSEPH CAMP, JR., | § | CASE NO. 08-11056-CAG |
| | § | |
| Debtor. | § | Chapter 7 |

**MEMORANDUM OPINION IN SUPPORT
OF AMENDED ORDER SUSTAINING TRUSTEE'S OBJECTION TO EXEMPTIONS**

On July 22, 2008, came on to be heard the Trustee's Objection to Exemptions (the "Objection") filed on behalf of Ronald Ingalls, the Chapter 7 Trustee in the above-styled and numbered case. Counsel for the Trustee and counsel for the Debtor appeared and argued, and the relevant facts are undisputed. At the conclusion of the hearing the Court took the matter under advisement.

**BACKGROUND
(The Facts and the Issues Presented)**

The overall issue in this case is whether the Debtor may claim the exemptions offered under the Bankruptcy Code–specifically, under 11 U.S.C. § 522(d) [hereinafter, "Code Exemptions"]. The

parties do not dispute the applicable facts or what laws govern that question, but do disagree regarding the legal interpretation of the provisions that govern.

The parties agree that the starting place for the Court's analysis is § 522(b), which provides in relevant part:

> (b)     (1) . . . [A]n individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection. . . .
>
> (2) Property listed in this paragraph is property that is specified under subsection (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize.
>
> (3) Property listed in this paragraph is--
>
>> (A) . . . any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located at a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period . . ..
>
> \*    \*    \*
>
> If the effect of the domiciliary requirement under subparagraph (A) is to render the debtor ineligible for any exemption, the debtor may elect to exempt property that is specified under subsection (d).

There is no dispute that the Debtor, although he properly filed this case in Texas, has not lived in Texas "for the 730 days immediately preceding the date of the filing of the petition." The parties also agree that the "the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period" was Florida. They also agree that it is Florida's "opt-out" statute that, under § 522(b)(2), determines at least in part whether he may claim Code Exemptions. They disagree, however, on how that Florida opt-out statute should be applied in this case. In particular, they disagree on whether that statute "specifically does not . . . authorize" the Debtor to claim Code Exemptions.

2

In the alternative, the Debtor argues that even if the Florida opt-out statute does not authorize him to elect Code Exemptions, he is nevertheless entitled to claim them under the above-quoted savings clause contained in the "hanging paragraph" at the end of § 522(b).

## **APPLICABILITY OF THE FLORIDA OPT-OUT STATUTE**
### **(Whether Florida's Opt-Out Statute Applies to the Debtor, a Non-Resident of Florida)**

The Debtor cites *In re Battle*, 366 B.R. 635 (Bankr. W.D. Tex. 2006), and *In re Schultz*, 101 B.R. 301 (Bankr. N.D. Fla. 1989), upon which *Battle* relied, as support for the Debtor's position that, according to § 522(b)(2), he is entitled to claim Code Exemptions because the law of Florida, undisputedly applicable to him under § 522(b)(3)(A), does not prohibit that claim. *Battle* and *Schultz* held that because the language of the Florida opt-out statute, § 222.20 of the Florida Statutes, limits its application to residents of Florida, if (as here) the debtor is not a resident of Florida on the petition date the opt-out statute does not apply to the debtor, who may therefore elect Code Exemptions.

In response, the Trustee argues in essence that *Battle* was wrongly decided and that this Court should reject its reasoning and result. He urges the Court to instead decide that Florida law "specifically does not so authorize" the Debtor's use of Code Exemptions and that he is, therefore, restricted according to § 522(b)(2) to claiming exemptions under Florida law and any applicable non-bankruptcy federal exemption law [hereinafter, "Florida Exemptions"].

This Court has carefully reviewed the *Battle* opinion and considered its reasoning, and acknowledges that other bankruptcy courts, both before and after *Battle*, have also held that where the choice of law provisions of § 522(b)(3)(A) require the application of the exemption laws of a state in which the debtor did not reside as of the petition date, and such state has opted out of the

3

Code Exemptions, the debtor may nevertheless choose Code Exemptions where the state's opt-out statute expressly states that it is not applicable to non-residents.[1]

At first blush, these courts' reasoning appears sound. It relies exclusively on the language of the applicable opt-out statute. In this case, the applicable Florida statute provides:

**Nonavailability of federal bankruptcy exemptions**

In accordance with the provision of s. 522(b) of the Bankruptcy Code of 1978 (11 U.S.C. s. 522(b)), residents of this state shall not be entitled to the federal exemptions provided in s. 522(d) of the Bankruptcy Code of 1978 (11 U.S.C. s. 522(d)). Nothing herein shall affect the exemptions given to residents of this state by the State Constitution and the Florida Statutes.

Fla. Stat. § 222.20 (2008). Florida has thus expressed its judgment that its residents who file bankruptcy should be restricted to claiming Florida Exemptions. Congress decided when it enacted the 1978 Bankruptcy Code to honor such decisions by the states that have made them, by expressly incorporating such "opt-out" provisions by reference in § 522(b)(2).

Residency restrictions in a state's exemption laws, including residency restrictions applicable to its opt-out statute, are equivalent to choice of law provisions–they address the question of what state's laws should determine the exemptions of a debtor who has moved from one state to another. Laura B. Bartell, *The Peripatetic Debtor: Choice of Law and Choice of Exemptions,* 22 Emory Bankr. Dev. J. 401, 417-18 (2006) [hereinafter, *The Peripatetic Debtor*]. However, by adopting § 522(b)(2) and (3)(A), Congress expressed its own judgment that, in instances where a debtor moves from one state to another within 730 days before filing bankruptcy, his exemptions should

---

[1] *See e.g.,* **In re Chandler**, 362 B.R. 723 (Bankr. N.D. W. Va. 2007) (addressing Georgia opt-out statute and finding it not applicable to non-resident debtor); **In re Underwood**, 342 B.R. 358 (Bankr. N.D. Fla. 2006) (same, addressing Colorado opt-out statute); **In re Volk**, 26 B.R. 457 (Bankr. D. S.D. 1983) (same, addressing South Dakota opt-out statute); **In re Walley**, 9 B.R. 55 (Bankr. S.D. Ala. 1981) (same, addressing Alabama opt-out statute); *see also* **In re Williams**, 369 B.R. 470 (Bankr. W.D. Ark. 2007) (using the same analysis but finding that the applicable opt-out statute–Iowa's–*does* apply to non-residents as well as residents).

be determined by the exemption laws (including any opt-out law) of his former domiciliary state. Thus, the issue in this case (and in *Battle* and similar cases) arises because of the conflict between a state law choice of law provision and the federal choice of law provision contained in § 522(b)(2) and (3)(A). Such conflicts are traditionally resolved by applying the doctrine of preemption. *See e.g., Boggs v. Boggs,* 520 U.S. 833, 844 (1997) ("In the face of this direct clash between state law and the provisions and objectives of [a federal statutory scheme], the state law cannot stand [because c]onventional conflict pre-emption principles require pre-emption where compliance with both federal and state regulations is a physical impossibility, . . . or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.") (internal quotation marks and citation omitted)); *CSX Transp., Inc. v. Easterwood* 507 U.S. 658, 663 (1993) ("Where a state statute conflicts with, or frustrates, federal law, the former must give way."); *Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88, 103 (1992) ("In determining whether state law stands as an obstacle to the full implementation of a federal law, . . . it is not enough to say that the ultimate goal of both federal and state law . . . is the same, [but rather a] state law also is pre-empted if it interferes with the methods by which the federal statute was designed to reach th[at] goal.") (internal quotation marks and citations omitted).

   The courts deciding *Battle* and similar cases, however, did not address this conflict between the applicable state opt-out statute and the federal statute, § 522(b)(3)(A), or the question of preemption. Instead, those courts assumed, without discussion, that § 522(b)'s incorporation of each state's substantive exemption laws also incorporated the state law choice of law provisions that each state applies to its exemption laws outside of bankruptcy (e.g., the residency restriction in its opt-out statute). In doing so, those courts have effectively written out of § 522(b)(3)(A) Congress's own considered policy judgment on which state's law should apply when a debtor moves before filing bankruptcy.

5

In two cases where the Courts *did* explicitly address whether state law choice of law provisions were incorporated by § 522(b)(3)(A)'s incorporation of the exemption laws of a particular state, the Eighth and Ninth Circuit Courts of Appeals have both (1) noted that § 522(b)(3)(A)[2] is a federal choice of law provision, and (2) held that it does not incorporate the whole of a state's laws and therefore does not incorporate its choice of law principles. *See* **In re Drenttl**, 403 F.3d 611, 614-15 (8th Cir. 2003)[3] and **In re Arrol**, 170 F.3d 934, 936 (9th Cir. 1999).

This Court agrees with the holdings in **Drenttl** and **Arrol** that state law choice of law provisions like residency restrictions are not incorporated in § 522(b)(3)(A). Section 522(b)(2) directs us to look at "the State law that is applicable to the debtor under paragraph (3)(A)" to determine whether it does not authorize the debtor to choose Code Exemptions. According to **Battle,** § 522(b)(2) means that the applicable state opt-out statute is simply applied, literally, to the actual facts of the debtor's residency as of the petition date. However, this Court finds that the

---

[2] Then § 522(b)(2)(A).

[3] Admittedly, the Courts in **Drenttl** and **Arrol** did not address the precise issues this Court posits as raised in this case–whether the language of the applicable state's exemption statute or opt-out statute that restricts its use to the state's residents should be construed to be a choice of law provision and, if so, whether § 522(b)(3)(A) preempts such state conflict of laws provisions. Rather, the argument the **Drenttl** and **Arrol** Courts addressed was whether § 522(b)(3)(A) [then § 522(b)(2)(A)] requires the enforcement of (statutory or judicially created) choice of law provisions *found outside of* the express language of the exemption statute or opt-out statute of the applicable state. Both Circuit Courts rejected that argument.
  The Eighth Circuit Court of Appeals in **Drenttl** held, specifically, that a Minnesota exemption law applied to the debtors' claimed homestead in Arizona. The Ninth Circuit Court of Appeals in **Arrol** held that a California exemption law applied to the debtor's claimed homestead in Michigan. Although both Courts first held that the choice of law provisions of the state whose exemption laws applied were generally not applicable in light of the federal choice of law provision that governed, both went on to examine what were essentially choice of law provisions contained within the applicable exemption statutes, and the case law construing and the policies behind those statutes, to find that the states whose laws applied did not restrict their homestead exemption to property within their borders. For the reasons discussed below, this Court would reject this second portion of the **Drenttl** and **Arrol** decisions that relied on state law, and would find instead that § 522(b)(3)(A)'s choice of law provision alone governs the issue.

6

doctrine of preemption requires that this Court not give effect to the residency restriction contained in Florida's opt-out statute, because that restriction conflicts with Congress's intent that the exemption laws of Florida, including its opt-out law, apply to a debtor who has recently moved from that state. The Court acknowledges, however, that no other court has yet expressly held that a state residency restriction in an opt-out statute is a choice of law provision that is preempted by § 522(b)(3)(A).[4]

There are other examples where courts have held that, notwithstanding § 522(b)'s incorporation by reference of state exemption law, a particular provision of that state law is not included in that incorporation. *The Peripatetic Debtor* at 420. For example, in ***Owen v. Owen*** the Supreme Court held that, even though under Florida exemption law homesteads are not exempt from liens that attach before the property becomes a homestead, a debtor who claimed Florida exemptions could nevertheless avoid such a lien under § 522(f)(1) as a lien impairing his homestead exemption. ***Owen v. Owen***, 500 U.S. 305, 312-13 (1991). In doing so, the Court rejected the argument, similar to the debtor's in ***Battle*** and the Debtor's here, that when Florida's exemptions are used in bankruptcy they must be limited as they are under Florida law and, therefore, because under Florida exemption law the homestead was subject to the lien, it could not be considered to be an impairment to the debtor's homestead. ***Owen***, 500 U.S. at 312-13. Rather, the Supreme Court interpreted the phrase in § 522(f)(1), "exemption to which the debtor would have been entitled under subsection (b) of this section," that, like § 522(b)(3)(A) in this case, invokes state exemption laws, and found that the phrase did not mean:

> an exemption to which the debtor "is entitled," but one to which he "would have been entitled." The latter phrase denotes a state of affairs that is conceived or

---

[4] One commentator, however, has presented that argument persuasively (to this Court). *See The Peripatetic Debtor*, *supra*.

hypothetical, rather than actual, and requires the reader to disregard some element of reality.

*Id.* at 311. In *Owen*, the "element of reality" that was to be disregarded was the fixing of the lien under Florida law; in this case, under § 522(b)(3)(A), the element of reality that must be disregarded is the fact that the debtor no longer is a domiciliary (or resident) of the state whose exemption law is to be applied to his property. As the Court in *Owen* stated, there is "no basis for pronouncing the opt-out policy absolute, [rather, we] must apply it along with whatever other competing or limiting policies the statute contains." In this case, § 522(b)(3)(A) evidences a strong policy in favor of treating a recently departed debtor as if he had not moved for purposes of determining what property he may claim as exempt.

In contrast, interpreting § 522(b)(3)(A) to import state exemption laws wholesale, including limitations based on residency or location of property, can lead to some absurd results. For instance, if a debtor has moved from Idaho within 730 days before filing bankruptcy, § 522(b)(3)(A) clearly says Idaho exemption laws apply. *Battle* would hold that the entirety of those exemption laws applied, including any residency restriction. The exemption statutes of Idaho include a provision that "[r]esidents of this state are entitled to the exemptions provided by this act [and n]onresidents are entitled to the exemptions provided by the law of the jurisdiction of their residence." I.C. § 11-602 (2008). According to the plain language of that choice of law provision, Idaho law does *not* apply. Instead, the law of the state of the debtor's *current* residence applies–a result clearly contrary to Congress's intent in enacting § 522(b)(3)(A).

Finally, it should also be noted that principles of states' rights and sovereignty preclude a state from exercising its jurisdiction over persons who are not residents of the state and decreeing what law applies to such persons. "A state has no interest, or indeed power, to decide whether

8

someone who is not subject to its exemption laws can elect to apply them..."[5] *The Peripatetic Debtor* at 423. Thus, when a non-resident invokes the protections of a state's exemption laws under § 522(b)(3)(A), he or she does so not under the state's authority but only by virtue of a federal choice of law provision. Section 522(b)(3)(A) clearly provides that the exemption laws of the state of the debtor's former domicile apply, regardless of the fact that the debtor is no longer a resident of that state. That federal provision "trumps" any residency restriction in state statutes that is applicable when those statutes are applied under the jurisdiction of the state.

Based on all the foregoing, the Court rejects the reasoning and result in **Battle** and similar decisions, and instead finds and concludes that, under the facts of this case, the Debtor may not elect under § 522(b)(2) to use the exemptions provided in 11 U.S.C. § 522(d), because the applicable state law, Florida's, has opted out of those Code Exemptions and that opt-out provision applies to the Debtor.

### APPLICABILITY OF THE SAVINGS CLAUSE
### (Whether Florida's Exemption Laws Are Unavailable to the Debtor
### Because They Do Not Apply to Property Outside of Florida)

The Debtor further argues, however, that if, as the Court has held, the Florida opt-out statute precludes him from electing under § 522(b)(2) to claim Code Exemptions, he may nevertheless claim them under the savings clause at the end of § 522(b). That is because, the Debtor contends, Florida's exemption laws are not applicable to his property because it is located outside of Florida . Therefore, inasmuch as Florida's opt-out law does not authorize him to elect Code Exemptions pursuant to § 522(b)(2), no exemptions are available to him under § 522(b)(2). *Schultz*, 101 B.R.

---

[5] It should not matter, therefore, whether a state's opt-out statute expressly states that it does not apply to non-residents, or its courts' decisions construing that statute say it does not– nor, indeed, should it matter if the statute or a court construing it says that it *does* apply to non-residents; in any case, it should not apply because a state has no jurisdiction to subject non-residents to the application of their exemption laws.

9

at 302. Under such circumstances, the Debtor argues, the savings clause of the "hanging paragraph" expressly allows him to claim Code Exemptions. This argument is but a different twist on the previous one, and highlights further the problem with ignoring § 522(b)(3)(A)'s choice of law provision and instead looking to the choice of law provisions of a state to determine whether the substantive exemption laws of that state should be applied to a debtor who no longer resides in (and thus ordinarily would no longer have property in) that state.

The Debtor refers, as support for his argument that he is not entitled to use Florida's state law exemptions to exempt his property that is located in Texas, to the ample authority that exists for the proposition that states cannot apply their exemption laws extraterritorially. *See* Judge William H. Brown, Lawrence R. Ahern, III, and Donna T. Snow, *The Extraterritorial Effect of Homestead Exemption Statutes: An Emerging Issue*, 2006 No. 01 Norton Bankr.L.Adviser 2 (Jan. 2006) ("The majority of states addressing the issue have determined that the state's homestead exemption is only available for property located within that state; that is, the homestead exemption statute has no extraterritorial effect[,] . . . based . . . on the premise that exemption laws are local in nature, arising from policy considerations regarding the sovereignty of the states."); *accord,* Judge William H. Brown, Lawrence R. Ahern, III, and Nancy F. MacLean, *Bankruptcy Exemption Manual* § 4:6 (2008) (citing ***In re Sipka***, 149 B.R. 181 (D. Kan. 1992), ***In re Ginther***, 282 B.R. 16 (Bankr. D. Kan. 2002), and ***In re Peters***, 91 B.R. 401 (Bankr. W.D. Tex. 1988)).

This Court does not disagree with that general rule, but merely how and the extent to which it should be applied in the context of § 522(b)(3)(A). In most instances, as in the ***Sipka*** and ***Peters*** cases, a debtor who selects state law exemptions under § 522(b) chooses exemptions under the law of his or her state of residence. In those cases, application of the general rule that state exemption laws have no extraterritorial effect or operation is straightforward, so that the debtor may not use the exemption laws of his state of residence to exempt property outside that state. This Court would

10

agree with that result, because no state has the jurisdiction to make its exemption laws applicable outside its borders.

But the general rule has limited application, where (as here) § 522(b)(3)(A) requires the application of the exemption laws of a state other than the state of the debtor's residence. For example, if thirty days before filing bankruptcy a debtor moved from Texas to Louisiana and purchased a home, § 522(b)(3)(A) requires the bankruptcy court to "disregard the element of reality" of the *actual* state of the debtor's residence (Louisiana), and instead engage in the fiction of considering the state of his or her former residence (Texas) to be the state where he or she currently resides. If the debtor chooses state exemptions, Texas exemption laws would apply to the debtor's home and other property located within the state–in this case, within "Louisiana *qua* Texas." This is *not*, however, the extraterritorial application of Texas's exemption laws. It is not under the authority of the State of Texas that its exemption laws are being applied to property outside Texas. Rather, it is a *federal* choice of law statute–§ 522(b)(3)(A)–that has expressly provided that the exemption laws of a particular state–Texas–are applicable to a debtor who, by definition, is no longer a domiciliary of that state and so whose property is almost certainly no longer located within that state. In other words,

> concerns regarding extraterritorial effects of state law are misplaced. We are dealing with a federal statute which has incorporated state law into its application. Upon incorporation, that state law became a part of the federal statutory scheme; so, it is federal law being given effect, not state law.

*In re Stockburger*, 192 B.R. 908, 910 (E.D. Tenn. 1996) (construing § 522(b)(2)(A)), *aff'd,* 106 F.3d 402 (6th Cir. 1997) (table).[6]

---

[6] This is not to say that the general rule, that a state's exemption laws have no extraterritorial effect, will *never* have any relevance or application whatsoever where § 522(b)(3)(A) requires the application of the exemption laws of a state other than the debtor's state of residence. If our hypothetical debtor (filing and living in Louisiana but claiming Texas exemptions under § 522(b)(3)(A)) owned property outside of "Louisiana *qua* Texas," it could

11

# **CONCLUSION**

For the foregoing reasons, the Court finds and concludes as follows:

1. Under § 522(b)(2) and (3)(A), the exemption laws of the State of Florida, including its opt-out statute (§ 222.20 of the Florida Statutes), apply to the Debtor herein.

2. The restriction in Fla. Stat. § 222.20 to non-residents is pre-empted by the federal choice of law provision of § 522(b)(3)(A), and therefore Florida's opt-out from the exemptions provided in 11 U.S.C. § 522(d) binds the Debtor.

---

not be exempted under Texas law because that law has no extraterritorial effect. *See **In re Peters***, 91 B.R. 401, 403 (Bankr. W.D. Tex. 1988) (debtor filing bankruptcy in Texas and claiming Texas exemptions could not exempt homestead located in Brazil because Texas "[e]xemption laws are local in their nature and have no extra-territorial force or operation").

This would include the scenario where the debtor's property, to continue our hypothetical, is actually in Texas. In that case, the property would be outside of "Louisiana *qua* Texas," just as much as it would be if located in, for example, Alabama. In both scenarios, the debtor would not be entitled to use state law (Texas law) to exempt property in a state other than "Louisiana *qua* Texas" (i.e., in Texas or in Alabama).

The facts of ***In re Ginther*** illustrate this scenario. In ***Ginther,*** as in the case at bar, the law of a state of which the debtors were not residents was applied because § 522(b)(3)(A) required its application. The debtors attempted to claim as exempt under the applicable laws of Kansas, the state of their former residence, the proceeds of their Kansas homestead which they had reinvested in a Colorado homestead. The Court denied that claim of exemption.

This Court agrees with the result in ***Ginther***, but not its reasoning. In ***Ginther***, the Court denied the exemption because it held that Kansas exemption law would not allow the exemption of the proceeds of exempt property (which the Court considered to be the prior Kansas homestead) when they are not intended to be reinvested in a Kansas homestead.

This Court disagrees with that analysis. According to reasoning described above with respect to this Court's Texas to Louisiana hypothetical, under the facts in ***Ginther*** § 522(b)(3)(A) required that Kansas exemption law be applied to the debtors and their property in Colorado, their state of residence, as if they were residents of Kansas and as if the property were located in Kansas. From that perspective, the property they sought to exempt was the proceeds of the sale of property from another state (confusingly, but only coincidently, Kansas, the state of their former residence whose exemptions laws were applicable). Under Kansas law, the proceeds of property that was exempt in another state and sold in that other state, but intended to be invested in a Kansas homestead, is not exempt. ***In re Sipka***, 149 B.R. 181 (D. Kan. 1992).

Thus this Court would reach the same result as the Court did in ***Ginther,*** but would use different reasoning.

12

3. Therefore, under § 522(b)(2) and (3)(A), the Debtor is confined to using the exemption laws of Florida and other non-bankruptcy federal exemption laws.

4. The exemptions laws of Florida apply to the Debtor's property located in the state of Texas, including but not limited to his homestead, but can not be used to exempt any of the Debtor's property located outside of Texas (including any located in Florida).

5. Even though the Debtor is precluded by Florida's opt-out statute from choosing exemptions under § 522(d), he may not choose those exemptions under the savings clause of the hanging paragraph of § 522(b) because Florida's exemption laws are available to the Debtor.

A separate order, based on the foregoing findings and conclusions, sustaining the Trustee's Objection and denying the Debtor's exemptions shall be entered.

# # #